# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| STANLEY R. PEARSON ) | Bankruptcy Case No. 08-24291-SBB |
| DONNA M. PEARSON, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ──────────────────────── ) | |
| ) | |
| STANLEY R. PEARSON ) | |
| DONNA M. PEARSON ) | |
| ) | |
| Movants, ) | |
| ) | |
| v. ) | |
| SECURITY PROPERTIES, LLC, ) | |
| ) | |
| Respondent. ) | |

**APPEARANCES:**

Barton Balis                                                  Richard A. Marsh
John H. Barrett                                             Samson, Pipis & Marsh, LLC
Balis & Barrett, P.C.                                     255 Weaver Park Road, Suite 200
728 Pearl Street                                            P.O. Box 1079
Boulder, CO 80302                                       Longmont, CO 80502-1079
COUNSEL FOR                                            COUNSEL FOR
STANLEY R. PEARSON AND                      SECURITY PROPERTIES, LLC
DONNA M. PEARSON

## MEMORANDUM OPINION AND ORDER

　　　THIS MATTER is before the Court on the Verified Motion to Avoid Fixing of Judicial Lien of Security Properties, LLC ("Creditor")[1] pursuant to 11 U.S.C. §522(f)(1)(A) filed by the debtors, Stanley R. Pearson and Donna M. Pearson ("Debtors"); a Response filed thereto by Creditor;[2] evidence and argument presented at a hearing before the Court on September 22,

---

[1] Docket #32

[2] Docket #40

2009;[3] and the Creditor's and Debtors' proposed Findings of Fact and Conclusions of Law.[4]

**I.      Background**

Donna and Stanley Pearson ("Debtors" or "Movants"), filed for bankruptcy on September 17, 2008.[5]  Pursuant to Colo. Rev. Stat. 38-41-201(1)(b),[6] the Debtors are entitled to a homestead exemption of $90,000.00 because Mr. Pearson is over 60 years of age.  Mr. Pearson presently is the only Debtor residing in the home, although Ms. Pearson has not abandoned her homestead interest in their marital residence (hereafter "the Residence").[7]  The parties have stipulated to the value of the Residence being $273,500.00.

At the time of the Debtors' filing, the Residence was encumbered by a first mortgage in favor of Countrywide in the amount of $127,781.00 and a second mortgage in favor of Charter One Bank for $48,433.00.  In addition, at the time of filing there existed a judgment lien against the Residence in favor of Creditor in the amount of $86,852.75.  This results in the total amount of liens with the homestead exemption reaching a figure of $353,066.75, thus exceeding the value of the property.

At issue in this matter is whether the Creditor's judicial lien should be avoided in its entirety or only partially.  As discerned above from the figures, the sum of the first and second mortgages and the exemptions leaves a net equity with the Residence of $7,286.00.  The Debtors assert in their Motion that under 11 U.S.C. §522(f)[8] the entirety of Creditor's judicial lien is avoidable.  Creditor responds that its judicial lien is only avoidable up to the amount their lien exceeds the Debtors' net equity after deducting unavoidable liens and the Debtors' homestead exemption.  That is, Creditor's argument goes, $7,2860.00 is not avoidable.

**II.     Issue**

The question before the Court is whether a debtor can avoid a judicial lien, in its entirety

---

[3]  Docket #56

[4]  Docket #58 and Docket #59

[5]  Docket #1.

[6]  Colo. Rev. Stat 38-41-201(1)(b) provides: (1) Every homestead in the state of Colorado shall be exempt from execution and attachment arising from any debt, contract, or civil obligation not exceeding in actual cash value in excess of any liens or encumbrances on the homesteaded property in existence at the time of any levy of execution thereon: (b) The sum of ninety thousand dollars if the homestead is occupied as a home by an elderly or disabled owner, an elderly or disabled spouse of an owner, or an elderly or disabled dependent of an owner.

[7] The Residence is found at 1344 Flannagan Court in Erie, Colorado.

[8] All future section references will refer to Title 11 of the United States Code unless otherwise stated.

or only "to the extent that such lien impairs an exemption," when only part, or a portion, of the lien actually impairs the debtor's exemption. For the reasons set forth herein, the Court concludes that a debtor can only avoid a judicial lien to the extent the lien exceeds a debtor's equity in the property subject to such lien.

### III.    Discussion

####    A.    Overview of 11 U.S.C. 522(f)

In accordance with the policy objective of providing a "fresh start," bankruptcy law allows a debtor to invoke certain exemptions to avoid debts that otherwise survive bankruptcy.[9] The homestead exemption set forth at 11 U.S.C. § 522 protects the debtor and the debtor's dependents by helping them to preserve an interest in their home.[10] Specifically §522(f) controls the "availability of lien avoidance."[11]

Under 11 U.S.C. § 522(f)(1), "the Debtors may avoid the fixing of a lien on an interest of the Debtors in property *to the extent that such lien impairs an exemption* to which the Debtors would have been entitled . . . . "[12] Divergent interpretations of what the language "to the extent that such lien impairs an exemption" was intended to convey gave rise to disputes among courts in applying the statute.[13] As a result of this confusion, in 1994 Congress amended the statute through passage of the Bankruptcy Reform Act of 1994 ("Reform Act") and defined "impairment" of an exemption.[14]

---

[9] *In re Sanders,* 39 F.3d 258, 260 (10th Cir.1994).

[10] *Id.* (citing *In re Niemyjski,* 26 B.R. 466, 468 (Bankr.D.N.M.1983)).

[11] *Id.* at 260-61 (citing *Heape v. Citadel Bank of Independence (In re Heape),* 886 F.2d 280, 282 (10th Cir.1989)).

[12] Emphasis added.

[13] *See also In re Saal*, 338 B.R. 501, 503 (Bankr.D.Colo. 2006) ("In 1994, Congress amended 11 U.S.C. § 522(f)(2) to resolve difficulties and inconsistencies in construing what constituted an impairment.")(footnote omitted); *In re Newell,* 311 B.R. 268, 270 (Bankr.D.Colo.2004)("In 1994, Congress added § 522(f)(2)(A), a definition of what constitutes impairment of an exemption, in order to resolve the conflicting judicial interpretations which had arisen under the prior law."(footnote omitted)); *In re Finn*, 211 B.R. 780, 781 (1st Cir.BAP1997)("Prior to the enactment of the formula in section 522(f)(2)(A), the extent to which a lien could be avoided if it impaired an exemption varied from court to court . . ."); Lawrence Ponoroff, *EXEMPTION IMPAIRING LIENS UNDER BANKRUPTCY CODE SECTION 522(F): ONE STEP FORWARD AND ONE STEP BACK,* 70 U. Colo. L. Rev. 1, 27 (Winter 1999)("As Congress approached the question of bankruptcy reform in 1993 and 1994, there was very little doubt that the lack of uniformity involving the interpretation of section 522(f) was impeding the efficiency and effectiveness of the consumer bankruptcy system.")(footnote omitted).

[14]    Pub.L. No. 103-394, 108 Stat 4106,§303 (1994).

>The statute now includes under 11 U.S.C. § 522(f)(2)(A) language stating:
>a lien shall be considered *to impair an exemption* to the extent that the sum of-
>(i) the lien;
>(ii) all other liens on the property; and
>(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>exceeds the value that the debtor's interest in the property would have in the absence of any liens.[15]

Leading up to this amendment, the Supreme Court addressed the appropriate calculation to ascertain whether a lien impairs an exemption.[16] In so doing, the Supreme Court favorably cited the case of *In re Brantz,* "[f]or a more precise formulation."[17]

The *Brantz* case utilized the following formula:

1. Determine the value of the property on which a judicial lien is sought to be avoided.
2. Deduct the amount of all liens not to be avoided from (1).
3. Deduct the Debtors' allowable exemptions from (2).
4. Avoidance of all judicial liens results unless (3) is a positive figure.
5. If (3) does result in a positive figure, do not allow avoidance of liens, in order of priority, *to that extent only.*[18]

In reviewing the House Report to the Reform Act (the "House Report") discussing the amendment of 522(f), it states that "[t]his amendment would provide a simple arithmatic test to determine whether a lien impairs an exemption, based upon [the] decision . . . *In re Brantz* . . . ."[19] As shown above, the *Brantz* opinion limited a debtor's avoidability of a judicial lien to the amount it exceeded the debtor's equity with the property after deducting the debtor's exemption and unavoidable liens.

---

[15] 11 U.S.C. § 522(f)(2)(A).(italics added).

[16] *Owen v. Owen,* 500 U.S. 305, 313, n. 5, 111 S.Ct. 1833, 1838, n. 5, 114 L.Ed.2d 350 (1991).

[17] *Owen,* 500 U.S. at 313, n. 5, 111 S.Ct. at 1833, n. 5. (citing *In re Brantz*, 106 B.R. 62, 68 (Bankr.E.D.Pa.1989)).

[18] *Brantz,* 106 B.R. at 68.(empahasis in *Brantz*).

[19] H.R.Rep. No. 835, 103rd Cong.2d Sess. 52 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361.

Applying the *Brantz* calculation to the facts here results in the following computation:

| | |
|---|---|
| 1. Value of Property: | $273,500.00 |
| 2. Less All Liens Not to Be Avoided (First and Second Consensual Liens) | $176,214.00 |
| 3. Less Homestead Exemption | $ 90,000.00 |
| 4. Total (Amount which cannot be avoided) | $ 7,286.00 |

Since the total is a positive figure, the Court should, using this equation, allow the avoidance of $79,566.75 of the $86,852.75 sought to be avoided because that is the extent to which the exemption is impaired. Thus, $7,286.00 of the lien would remain as secured debt with the Residence.

Previously, this Court concluded that this result "would seem to conflict with the legislative history and the express language of 11 U.S.C. § 522(f)(2)(A)."[20] In concluding such liens should be avoided in their entirety:

> [t]his conclusion makes sense because if the Debtor were to later sell his homestead, a portion of the judicial lien would remain after discharge. The judicial lien would have to be satisfied at the time of the sale in order to transfer clear title. "Thus, the mere existence of a judicial lien impairs the homestead exemption because it constitutes a cloud on the title."[21]

Nonetheless, the majority of the the courts addressing §522(f) partial avoidance hold contrary to the *In re Saal* opinion.[22] For this reason the Court believes a fresh review of the conclusions reached in *In re Saal*, including the language of §522(f), its progeny of case law, and its legislative history, are warranted to determine this matter.

---

[20] *In re Saal,* 338 B.R. 501, 505 (Bankr.D.Colo. 2006).

[21] *Id*. at 504 -505 (citation omitted).

[22] *See, e.g.*, *In re Brinley* 403 F.3d 415 (6th Cir. 2005); *In Kolich v. Antioch Laurel Veterinary Hospital* (*In re Kolich*), 328 F.3d 406, 410 (8th Cir.2003); *In re Silveira*, 141 F.3d 34 (1st Cir.1998); *In re Finn*, 211 B.R. 780 (1st Cir. BAP 1997); *In re Hastings*, 185 B.R. 811 (BAP 9th Cir. 1995); *In re Keenan*, 364 B.R. 786 (Banrk. D. N.M 2007); *In re Barrett*, 370 B.R. 1 (Banrk. D. Me. 2007);*In re Saucier*, 353 B.R. 383 (Bankr. D. Conn.2006); *In re Varallo*, 2006 WL 2433469 (Bankr. N.D. Ind.); *In re Ryan*, 210 B.R. 7 (Bankr.D.Mass. 1997); *In re Sheth,* 225 B.R. 913, 917 (Bkrtcy.N.D.Ill.,1998) *In re Corson*, 206 B.R. 17 (Bankr.D.Conn.1997); *In re To dd*, 194 B.R. 893 (Bankr.D.Mont.1996); *In re Johnson*, 184 B.R. 141 (Bankr.D.Wyo.1995); *In re Moe*, 199 B.R. 737, 739-40 (Bankr.D. Mont.1995); *In re Thomsen*, 181 B.R. 1013 (Bankr.M.D.Ga.1995).; *see also* 3 Norton Bankr. L. & Prac. 3d §56:28 (2009)("Under the formula now provided for determining impairment, the judicial impairment remains in place only to the extent that it is supported by value after satisfaction of the exemption.(footnote omitted").

### B. The Statutory Language

To interpret and apply 522(f), the Court must look to the plain meaning of the statutory language.[23] A court's primary task in interpreting statutes is "to determine congressional intent, using 'traditional tools of statutory construction.' "[24] The Tenth Circuit described the process of statutory construction as follows:

> As in all cases requiring statutory construction, "we begin with the plain language of the law." *United States v. Morgan,* 922 F.2d 1495, 1496 (10th Cir.1991). In so doing, we will assume that Congress's intent is expressed correctly in the ordinary meaning of the words it employs. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). Therefore, "[i]t is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls." *Edwards v. Valdez,* 789 F.2d 1477, 1481 (10th Cir.1986). Where the language of the statute is plain, it is improper for this Court to consult legislative history in determining congressional intent. *United States v. Richards,* 583 F.2d 491, 495 (10th Cir.1978). Furthermore, legislative history may not be used to create ambiguity in the statutory language. *Id.* Our role in construing statutes was summarized by Justice Holmes: " 'We do not inquire what the legislature meant; we ask only what the statute means.' " *Edwards,* 789 F.2d at 1481 n. 7 (quoting OLIVER WENDELL HOLMES, COLLECTED LEGAL PAPERS 207 (1920).[25]

Section 522(f)((2)(A) clearly states "a lien shall be considered to impair an exemption to the extent that the sum . . . exceeds the value that the debtor's interest in the property would have in the absence of any liens."[26] The Debtors possess full ownership of the Residence, thus their interest is the full value of the Residence. As the statute plainly states, the judicial lien of Secured Properties, is avoidable "to the extent" the sum of liens exceed the value ($273,000.00) of the debtors' interest in the Residence in the absence of any liens. If there were no liens, the Debtors' interest would be the full value of the Residence, which is $273,000.00. The Court thus reads the plain meaning of the statute to pronounce liens are avoidable "to the extent" such liens

---

[23] *See United States v. Ron Pair,* 489 U.S. 235, 241 (1989).

[24] *St. Charles Investment Co. v. Commissioner of Internal Revenue,* 232 F.3d 773, 776 (10th Cir.2000) (quoting *NLRB v. United Food & Commercial Workers Union,* 484 U.S. 112, 123 (1987)).

[25] *St. Charles Investment,* 232 F.3d. at 776.

[26] Section 522(f)(2)(A).

exceed the $273,000.00; thus, resulting portions of a judicial lien that falls below the value are unavoidable.

The Court's interpretation of the phrase "to the extent" is essential to this conclusion. The Court is not resigned to rely upon its own understanding of this phrase, but rather need only follow guidance provided by the Tenth Circuit's interpretation of the phrase. In the opinion, *In re Sanders*, the Tenth Circuit interpreted the implication the phrase "to the extent" placed upon impairment within §522(f)(1).[27] The *Sanders* opinion incorporated the statutory construction principles of interpreting words "as taking their ordinary, contemporary, common meaning," and endorsed what it called "the majority view" in concluding "to the extent" within §522(f)(1) to mean "a lien is . . . not avoidable beyond the amount of the exemption."[28] The opinion went on to say "[t]here is simply no room within the limiting language of § 522(f) to conclude other than the extent to which the exemption is impaired is coincident with the amount of the exemption.(footnote omitted)."[29]

Despite the *Sanders* opinion being a case wherein the Reform Act of 1994 was not effective and having its order overruled by the Reform Act's passage, the pertinent statutory language added in (f)(2) fails to provide evidence that leads this Court to believe the straightforward analysis and conclusions of the *Sanders*' opinion concerning the meaning of "to the extent" should be read any differently today.[30]

Pertinent here, the 1994 amendment added, among other things, what is presently 522(f)(2).[31] The three subsections within (f)(2) did three things: (A) it defined when a lien is impairing an exemption, which again utilized the term "to the extent," (B) provided that a lien that has been avoided is not to be considered in making the calculation to determine impairment,

---

[27] *In re Sanders,* 39 F.3d 258.

[28] *Sanders,* 39 F.3d at 261(citing *Perrin v. United States,* 444 U.S. 37, 42 (1979)); *See also In re Silveira,* 141 F.3d at 36 ("The statutory directive that a debtor may avoid a judicial lien "to the extent that" the lien impairs an exemption favors-or is at least readily amenable to-reading the definition of "impairment" in § 522(f)(2)(A) not only as a *condition* of avoidability, but also as a *proportional measure* of the scope of the debtor's avoidance power.").

[29] *Sanders,* at 261-262.

[30] *See In re Brinley*, 403 F.3d at 421("The language of the relevant statute, however, authorizes avoidance of judicial liens only to the extent that those liens impair an exemption. An exemption is impaired, moreover, "to the extent that the sum of [the liens and the exemption] exceeds the value the debtor's interest in the property" absent the liens. 11 U.S.C. § 522(f)(2)(A). Because the amount of the impairment in this case is $98,763.44, [the creditor's] lien may be avoided only by that amount, thus allowing [the debtor] to take advantage of the statutory exemption afforded him. Consequently, [the creditor] retains a lien on the debtor's property in the amount of [the remaining equity]. (citation omitted)."; *In re Kolich,* 328 F.3d at 409 n. 2 (8th Cir. 2003)("Under § 522(f), only the portion of a judicial lien that impairs the exemption may be avoided by the debtor. Thus, to the extent the debtor has equity in the exempt property that exceeds the allowed bankruptcy exemption, the judicial lien may not be avoided.")(citation omitted).

[31] *See supra* footnote 14.

7

and (C) it precluded the new subsection from applying to a judgment arising out of a mortgage foreclosure. None of these conflict with *Sanders'* conclusions regarding when an exemption is impaired. To not impart consideration to the Tenth Circuit's statements on this term would seem irresponsible. Furthermore, if the Court only treats this interpretation as persuasive, it still would support this Court's interpretation.[32]

This reading is further solidified by the simplicity with which an alternative interpretation could have been achieved. If the plain meaning of the statute was to apply the statute so as to avoid the lien in its entirety, Congress would have substituted "to the extent" with "if" or "upon" or "when" or any number of words or phrases that would easily and unequivocally communicate this to be its intent.[33] Congress instead chose the words "to the extent." The Court should not dismiss the language Congress affirmatively implemented.

Moreover, a set of hypotheticals contained within the First Circuit's opinion in *In re Silveira* reinforces the pragmatism engendered in the application of 522(f) that this Court now endorses.

> *Hypothetical A:* The debtor owns a primary residence with a market value of $100,000, subject to an outstanding mortgage balance of $55,000, a judicial lien of $30,000 (not securing a debt), and no other liens. The debtor is entitled, under § 522(d)(1), to claim an exemption of $15,000 with respect to the property.
>
> *Hypothetical B:* Same as Hypothetical A, except that the debtor's property is subject to a judicial lien of $30,001 instead of $30,000.
>
> In Hypothetical A, we can see that the sum of the judicial lien ($30,000), other liens ($55,000) and the debtor's exemption ($15,000) does *not* exceed the value of the debtor's property ($100,000). Thus the judicial lien in Hypothetical A does *not* impair the debtor's exemption within the meaning of §

---

[32] *But see In re Cisneros,* 257 B.R. 332, 336-340 (Bankr. D.N.M. 2000) ("This third step of the *Sanders* test [to determine whether the lien actually impairs the exemption] is not directly addressed by the 1994 amendment, and therefore it might be argued that Sanders is still good law and binding . . . ."). The *Cisneros* opinion ultimately found the Reform Act had overridden Sanders and its statements were not binding, but still the opinion endorsed the use of partial lien avoidance.).

[33] *See also In re Silveira,* 141 F.3d 34, 36 (1st Cir.1998)("If Congress intended for avoidance of judicial liens to be an 'all-or-nothing' matter, one might wonder why the provisions' drafters chose to use the connective phrase 'to the extent that,'in lieu of the word 'if,' which obviously would have been a simpler construction.");*In re Furkes,* 65 B.R. 232, 235 (D.R.I.1986) ("The 'to the extent that' clause cannot be seen as some sort of legislative slip of the pen.... [H]ad Congress intended ... an all-or-nothing proposition, it would have drafted the statutory language more infrangibly...."); *See also In re Duvall,* 218 B.R. 1008, 1013-1014 (Bankr.W.D. Tex. 1998)(citing a number of cases and statutes that view "to the extent" as words of limitation).

> 522(f)(2)(A), and the debtor is *not* entitled to avoid any portion of that lien under § 522(f)(1).
>
> In Hypothetical B, however, the sum of the judicial lien ($30,001), other liens ($55,000) and the debtor's exemption ($15,000) *does* exceed the property's value (by $1), and so the targeted judicial lien is deemed under § 522(f)(2)(A) to impair the debtor's exemption.[34]

Under the Debtors' interpretation, this impairment requires that the debtor in Hypothetical B be permitted to avoid the $30,001 judicial lien *in its entirety*. Thus, a $1 *increase* in the amount of the (unavoidable) judicial lien in Hypothetical A would result in the debtor's acquiring the power to avoid the lien in full. The *Silvera* opinion also added that under this interpretation the debtor in Hypothetical A would also acquire full avoidance power if the value of the debtor's property was reduced, or the amount of consensual liens was increased by $1.[35]

For the reasons above, the Court reads the language of 522(f) to be unambiguous in its support of partial avoidance and recognizes that its analysis may rightfully stop here.[36]

### C. Legislative History

Still, courts often turn to the legislative history, which in light of inconsistencies, is of little benefit to interpreting Congress' intention on this section.[37] The holding of *Saal* was admittedly assisted through this Courts' review of the statute's legislative history, namely the aforementioned House Report. In the House Report, subsequent to directing the statute's application mirror the mathematical formula utilized in *Brantz,* it went on to state that it was overruling the decisions *In re Gonzalez,* 149 B.R. 9 (Bankr.D.Mass.1993), *vacated on appeal,*

---

[34] *Silveira,* 141 F.3d at 37.

[35] *Id.* at 36.

[36] *See Ron Pair,* 489 U.S. at 241 (citing *Caminetti v. United States,* 242 U.S. 470, 485 (1917)("In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' "); *see also In re Brinley,* 403 F.3d at 422 (citing *In re Kolich,* 328 F.3d at 410)(noting "the competing equities [of 522(f) are] both hard to weigh and finely balanced, our task is simply to apply § 522(f)(2)(A) as Congress wrote it."); *Tedeschi v. Falvo (In re Falvo),* 227 B.R. 662, 666 (6th Cir. BAP 1998)("partial lien avoidance is appropriate in these circumstances and ... full avoidance is inconsistent with the language and intent of the statute.").

[37] *In re Spade,* at 228 (citing St. *Charles Investment*, 232 F.3d at 776)("Furthermore, legislative history may not be used to create ambiguity in the statutory language."(additional citations omitted)).

191 B.R. 2 (D.Mass.1996); and *In re Chabot,* 992 F.2d 891 (9th Cir.1993).[38] The opinions of *Gonzales* and *Chabot* both read 522(f) to allow partial lien avoidance.

However, as the Bankruptcy Court within the Northern District of Illinois pointed out in *In re Sheth*, a reading of the House Report in its entirety lends more confusion than assistance in interpreting when a lien impairs an exemption under §522(f). The Court there stated:

> The House Report states that *Gonzalez* and *Chabot* wrongly refused to avoid a judicial lien when there was no equity after payment of the senior lien or when there was no equity after payment of the senior lien and the exemption. These cases, however, actually dealt with the situation where there was some equity after payment of senior liens and the exemption. *Gonzalez,* 149 B.R. at 10-11; *Chabot,* 992 F.2d at 894-95. Based upon this partial equity, the judicial lien was only partially avoided in *Gonzalez* and *Chabot.* The House Report mischaracterizes the facts and the holdings of these cases when it says they failed to avoid the judicial lien in a no equity situation. Based upon these apparent errors and inconsistencies, the majority of the courts who have looked at the legislative history underlying the 1994 amendments have concluded that it does not definitively resolve the issue of partial lien avoidance. *See In re Silveira,* 141 F.3d 34 (1st Cir.1998); *In re Ryan,* 210 B.R. 7 (Bankr.D.Mass.1997); *In re Moe,* 199 B.R. 737 (Bankr.D.Mass.1995).[39]

In addition, none of the examples of "situations" cited in the House Report for which the legislation was to address involved facts where net equity remained after deduction of unavoidable liens and the debtor's exemption.[40]

---

[38] The House Report referenced other court decisions applying 522(f) that it was intending to overrule, however for the purposes of this issue these are the only pertinent cases discussed.

[39] *In re Sheth*, 225 B.R. 913, 918 n. 4 (Banrk.N.D. Ill.1998); *see also In re Finn,* 211 B.R. 780, 782 (1st Cir.BAP 1997)("We agree . . . that the cases cited in the legislative history do not fit the examples discussed there.")(footnote omitted)).

[40] The House Report to the 1994 amendments to the Bankruptcy Code, related to section 522(f)(2), provided, in part:

> Because the Bankruptcy Code does not currently define the meaning of the words "impair an exemption" in section 522(f), several court decisions have, in recent years, reached results that were not intended by Congress when it drafted the Code. This amendment would provide a simple arithmetic test to determine whether a lien impairs an exemption, based upon a decision, *In re Brantz,* 106 B.R. 62 (Bankr.E.D.Pa.1989), that was favorably cited by the Supreme Court in *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 1838, n. 5, 114 L.Ed.2d 350.

Courts have interpreted the House Report to reach different conclusions on partial lien

> The decisions that would be overruled involve several scenarios. The first is where the debtor has no equity in a property over and above a lien senior to the judicial lien the debtor is attempting to avoid, as in the case, for example of a debtor with a home worth $40,000 and a $40,000 mortgage. Most courts and commentators had understood that in this situation the debtor is entitled to exempt his or her residual interest, such as a possessory interest in the property, and avoid a judicial lien or other lien of a type subject to avoidance, in any amount, that attaches to that interest. Otherwise, the creditor would retain the lien after bankruptcy and could threaten to deprive the debtor of the exemption Congress meant to protect by executing on the lien. Unfortunately, a minority of court decisions, such as *In re Gonzalez,* 149 B.R. 9 (Bankr.D.Mass.1993), have interpreted section 522(f) as not permitting avoidance of liens in this situation. The formula in the section would make clear that the liens are avoidable.
>
> The second situation is where the judicial lien the debtor seeks to avoid is partially secured. Again, in an example where the debtor has a $10,000 homestead exemption, a $50,000 house and a $40,000 first mortgage, most commentators and courts would have said that a judicial lien of $20,000 could be avoided in its entirety. Otherwise, the creditor would retain all or part of the lien and be able to threaten postbankruptcy execution against the debtor's interest which, at the time of the bankruptcy is totally exempt. However, a few courts, including the Ninth Circuit in *In re Chabot,* 992 F.2d 891 (9th Cir.1993), held that the debtor could only avoid $10,000 of the judicial lien in this situation, leaving the creditor after bankruptcy with a $10,000 lien attached to the debtor's exempt interest in property. This in turn will result, at a minimum, in any equity created by mortgage payments form the debtor's postpetition income-income which the fresh start is supposed to protect-going to the benefit of the lienholder. It may also prevent the debtor from selling his or her home after bankruptcy without paying the lienholder, even if that payment must come from the debtor's $10,000 exempt interest. The formula in the section would not permit this result.
>
> The third situation is in the Sixth Circuit, where the Court of Appeals, in *In re Dixon,* 885 F.2d 327 (6th Cir.1989), has ruled that the Ohio homestead exemption only applies in execution sale situations. Thus, the court ruled that the debtor's exemption was never impaired in a bankruptcy and could never be avoided, totally eliminating the right to avoid liens. This leaves the debtor in the situation where, if he or she wishes to sell the house after bankruptcy, that can be done only by paying the lienholder out of the equity that should have been protected as exempt property. By focusing on the dollar amount of the exemption and defining "impaired," the amendment should correct this problem. By defining "impairment," the amendment also clarifies that a judicial lien on a property can impair an exemption even if the lien cannot be enforced through an execution sale, thereby supporting the result in *In re Henderson,* 18 F.3d 1305 (5th Cir.1994), which permitted a debtor to avoid a lien that impaired the homestead exemption even though the lien could not be enforced through a judicial sale.

avoidance.[41] The line of cases championing partial avoidance note its endorsement of *Brantz*, which utilized partial avoidance.[42] Still, another line of cases find the House Report's language overruling opinions wherein partial avoidance was utilized to support the position of avoidance of liens in their entirety.[43] The House Report consequently has only served to prolong disputes as to what constitutes impairment, which the Reform Act was intended to remedy. From these conflicting interpretations this Court finds the legislative history contained in the House Report to be an "untrustworthy indicator of Congress' intent" regarding partial avoidance within 522(f).[44] "In the absence of *clear* congressional intent to the contrary, the language . . . must be applied, not interpreted or modified."[45] No "clear" intent can be derived to sustain the Debtors' position from the House Report, as it is not a reliable source in supporting an intent contrary to the statute's clear language.[46]

### D. Bankruptcy Policy

This Court's rejuvenated interpretation is also consistent with bankruptcy policy. First, *Saal* held that to allow a lien to remain impairs a "right to fully realize any homestead exemption" and "the debtor's right to a fresh start."[47] However, in reviewing the language of the statute, it speaks of the impairment not of rights but of the exemption itself.[48] The excess of a judgment lien over the exemption amount logically and by definition cannot impair the

---

[41] *In re Kolich,* 328 F.3d at 408 ("In 1994, Congress added the formula in § 522(f)(2)(A), intending to bring order out of the prior chaos. Unfortunately . . . the formula has itself generated inconsistent judicial interpretations.").

[42] *See, e.g., In re Seth*, 917-918 ("This Court concludes that the plain meaning of the statutory language, as well as the reference to *Brantz* formula in legislative history, allow for partial avoidance of a judicial lien to the extent that the lien only partially impairs the debtor's exemption.").

[43] *See e.g., In re Allard*, 196 B.R. 402, 411 (Bankr. N.D. Ill. 1996); *In re Jakubowski*, 198 B.R. 262 (Bankr. N.D. Ohio 1996).

[44] *See In re Spade*, 258 B.R. 221, 229 n. 4 (Bankr. D.Colo.2001)("The legislative history of § 305 is an untrustworthy indicator of Congress' intent regarding the scope of a court's discretion in § 305 matters as courts have interpreted the Committee's report differently. ").

[45] *Id*. at 229. (emphasis added).

[46] *See U.S. v. LTV Steel Co., Inc.*, 269 B.R. 576 (W.D. Pa. 2001)(Provides that a court may depart from the plain language of a statute where there is an extraordinary showing of a contrary congressional intent in the legislative history).

[47] *Saal* at 505.

[48] *See In re Sanders,* 39 F.3d at 262.

exemption itself. As *Sanders* notes, " to reach the result suggested, one must add language to § 522(f) which has not been provided by Congress."[49]

This application still benefits the Debtors and provides them with a "fresh start."[50] Under this approach the Debtors have claimed a $90,000 exemption, and have gotten a $90,000 exemption. In addition, although the Debtors have been unable to totally avoid the Secured Properties judicial lien, they have been able to reduce the amount of the lien by $79,566.75. Consequently, the Debtors retain the $90,000.00 homestead exemption they are entitled to under Colorado law.

As well, partial avoidance would provide certainty and clarity by setting the creditor's lien at a fixed amount and permit the Debtor to retain any future appreciation in the property, further enhancing their "fresh start."

Another issue courts discuss are fears that such an interpretation does not allow the debtor to enjoy the future appreciation. The practical effect of this holding is to allow any appreciation in the property or retirement of principal to be subject to the lien. Such an effect, however, is in accord with the general principle that a debtor cannot use the protection of bankruptcy to avoid a lien on the value of an interest that arises after the lien is attached or after the bankruptcy proceedings have concluded.[51]

Additionally, it would be inconsistent with the policy of exemptions to permit the Debtor to avoid the lien in full despite the existence of non-exempt equity to which the lien could attach. To do so would in effect allow the Debtor an unlimited exemption. To this end the Court need only refer to the above mentioned hypothetical to illustrate such pitfalls.[52]

Lastly, the interpretation urged by the Debtors posses an incentive for manipulation by creditors and debtors. Complete lien avoidance "could be easily avoided by the creditor's voluntary reduction in the amount of the claim secured by the lien."[53] Creditors may, independently or through collusion with a debtor, disingenuously utilize full avoidance to ensure securities of their debts are free from judicial lien(s). Also, debtors may manipulate debt

---

[49] *Id*.

[50] *See Finn*, at 783.

[51] *See Farrey v. Sanderfoot,* 500 U.S. 291, 300, (1991); *Finn*, 783 -784.

[52] *See also Finn,* 784-785 ("For example, if the property in this case were worth $500,000 instead of $225,000, the Debtor-Appellee would exit bankruptcy with $154,897.34 in consensual liens, a $15,700 exemption, *plus* an additional $329,402.66 in equity. If Congress had wanted the Debtor-Appellee to receive an exemption in the amount of $345,102.66, section 522(d) would not contain dollar limits.")(footnotes omitted).

[53] *In re Thomsen,* 181 B.R. at 1016.

payments to engineer complete lien avoidance through surreptitiously creating disproportionate debt equity ratios on applicable liens or have consensual liens intentionally increased to avoid a large judicial liens in its entirety. "This kind of claims gamesmanship is surely not what this amendment was intended to invite."[54] The interpretation this Court now announces as set forth herein diminishes the incentive for such abuses.

## IV.     Conclusion and Order

For the reasons set forth above the Debtors' Motion[55] is GRANTED, in part, and DENIED, in part. Security Properties, LLC's judicial lien is avoided in the amount of $79,566.75. This same judicial lien is not avoided in an amount of $7,286.00 and remains secured to the Residence.

Dated this 15th day of April, 2010.

BY THE COURT:

_Sid Brooks_
Sidney B. Brooks,
United States Bankruptcy Judge

---

[54] *Id.*

[55] Docket #32.